**BURGER KING CORPORATION,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

Nos. 82–1968, 83–5076.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1983.

Decided Jan. 13, 1984.

Robert M. Vercruysse, argued, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Judith Rivlin, argued, Washington, D.C., for respondent.

Before ENGEL and MERRITT, Circuit Judges, and MORTON, Chief District Judge.[*]

MORTON, District Judge.

The United Labor Union (ULU) had been engaged in an organizing drive at the Burger King restaurant located at Michigan Avenue and Martin in Detroit, Michigan. On Thursday morning, May 28, 1981, at about 11:30 a.m., a number of off-duty employees accompanied by a union organizer entered restaurant 768 and took over the restaurant. Some of the employees on duty, including Cynthia Diane Williams, joined the takeover. As a result of the said activity, Burger King suspended certain employees involved in the takeover. However, during the melee ensuing as a result of the takeover of the restaurant, Gregg Barnhardt, who had arrived some 1½ hours after the takeover, asked Cynthia Williams, "What happened that made everyone so angry?" She proceeded to answer. Barnhardt then asked what a union could do for the employees. Thereupon the conversation was terminated. Williams testified that she did not feel intimidated by the conversation.

On May 28, 1981, Barnhardt noticed that Williams was wearing an unauthorized "ULU" button. He asked her if she knew that wearing the button was against company policy. She removed the button. Griggs, a drive-in window employee of Burger King who greeted customers, on hearing the conversation between Barnhardt and Williams removed her ULU pin.

Charges were filed with the National Labor Relations Board. We are concerned with only two of those charges: One, that the conversation between Barnhardt and Williams was coercive in nature, and two, that the enforcement of the rule by Burger

King against the unauthorized wearing of buttons and other adornment by employees was improper.

The administrative law judge held that the conversation between Barnhardt and Williams was coercive and violated Section 8(a)(1) of the Act. He dismissed the charge regarding button wearing involving employee Griggs. The NLRB sustained the finding that the conversation between Barnhardt and Williams was coercive and reversed his ruling that the company was permitted to require the removal of the labor union buttons.

An examination of the record in the case reveals that the environment at the restaurant on May 28, 1981, was confused. The inquiry to determine what had been the catalyst for the events made by a supervising employee 1½ hours after the labor confrontation is innocuous at best. His question to the effect "What can a union do for you?" is far from coercive. This court has long held that inquiries alone do not amount to coercion. The test is set forth in *N.L.R.B. v. Elias Bros. Big Boy, Inc.*, 325 F.2d 360 (6th Cir.1963) and reaffirmed in *National Labor Relations Board v. Streamway Division of the Scott & Fetzer Company*, 691 F.2d 288 (6th Cir.1982); *see also Charge Card Association v. National Labor Relations Board*, 653 F.2d 272 (6th Cir.1981). The determination by the NLRB regarding coercive interrogation will not be enforced.

As to the labor union button worn by Griggs, the employee who had contact with the public, we find that all of the Burger King food-handling employees are provided with identical uniforms which they are required to wear on the job in a neat and well-pressed condition. The policy includes a published regulation that "only company approved name tags, buttons and alterations in uniforms are allowed." The administrative law judge found:

> I place little reliance on the general counsel's alternative argument that the respondent disparately applied its general regulation permitting employees to wear nonunion related buttons and insignia on their uniforms but restricting them in the wearing of union buttons. Two witnesses testified that they have either seen or personally worn buttons to work wearing [sic, bearing] such descriptions as "Kiss Me, I'm Polish" or containing fuzzy, smiley faces. These rare and incidental departures from the norm do not establish a company practice, either locally or nationally, of permitting deviations from its published rule. Mrs. Amato testified credibly that she repeatedly warned employees that the wearing of buttons and insignia, even including religious insignia, violated company policy and regularly required employees to remove such insignia while at work.

Note 5, App. p. 20. The record supports his finding.

Here Burger King has attempted to project a clean, professional image to the public. It has consistently enforced its policy against wearing unauthorized buttons in a nondiscriminatory manner. It is a national fast food chain deriving much of its recognition from its uniform public image. It is not asserted that this policy had its inception because of labor unions or union activities. There are special circumstances which justify this prohibition. *See National Labor Relations Board v. Harrah's Club*, 337 F.2d 177 (9th Cir.1964); *see also, Larand Leisurelies, Inc. v. National Labor Relations Board*, 523 F.2d 814 (6th Cir.1975); *Davison-Paxon Company, a Division of R.H. Macy & Company v. National Labor Relations Board*, 462 F.2d 364 (5th Cir.1972). The NLRB order regarding union buttons will not be enforced insofar as it applies to employees who have contact with the public. We think the rule in this circuit should be that where an employer enforces a policy that its employees may only wear authorized uniforms in a consistent and nondiscriminatory fashion and where those employees have contact with the public, a "special circumstance" exists as a matter of law which justifies the banning of union buttons.

ENGEL, Circuit Judge, concurring in part and dissenting in part.

Although I fully agree that the Board was incorrect in finding the ban on

buttons to have been a violation of the Act, I disagree with the majority's treatment of the coercive questioning issue. While I believe that Barnhardt's questions to Cynthia Williams about the union were, in the abstract, not coercive, the circumstances in which the conversation occurred provide substantial support for the Board's findings of coercive effect. Those circumstances were: (a) Barnhardt was obviously part of the company management and had come to the particular outlet in response to the local manager's call for help, and (b) his questioning came at a time when the restaurant was shut down because of the incident and emotions were still running high. Thus, the conditions surrounding the interrogation were very different from the circumstances in *National Labor Relations Board v. Streamway Division of the Scott and Fetzer Co.*, 691 F.2d 288 (6th Cir.1982), cited by the majority. In *Streamway*, we found that the questioning concerning a union was not coercive because it was conducted "not by the Company but by a professional attitude survey company" and because the questions were asked in a relaxed atmosphere. Given the very different conditions in this case, I am unwilling to disturb the Board's finding that such inquiries would tend to have a coercive effect upon the employees so questioned.

MERRITT, Circuit Judge, concurring in part and dissenting in part.

Although I agree with Judge Morton that the Board's determination regarding coercive interrogation should not be enforced, I do not agree with Judge Morton's and Judge Engel's decision that the Board's order regarding union buttons should not be enforced because this case presents a set of facts which constitute "special circumstances" as a matter of law justifying Burger King's banning of union buttons. In my opinion, there is ample case law as well as substantial evidence supporting the Board's finding that Burger King violated section 8(a)(1) of the Act by prohibiting a restaurant employee from wearing a union button.

An employee has a right, protected by section 7 of the Act, 29 U.S.C. § 157, to wear union buttons and insignia at work, unless the employer demonstrates the existence of "special circumstances" which necessitate the banning of such insignia in order to reduce employee dissension or distractions from work, maintain employee safety and discipline, protect machinery or products, or project a certain image to the public. *Pay 'N Save v. N.L.R.B.*, 641 F.2d 697, 700 (9th Cir.1981). Only the last of these special factors is even arguably present in the instant case; indeed, the Board found and the record supports that the union button involved here is small, innocuous, and unprovocative. There is no evidence in the record indicating even the possibility that customers might complain about such buttons or that these buttons damaged the employees' image more than the few buttons sanctioned by the employer. Furthermore, Burger King's ban applies to all of its employees, including those who do not have any public contact; as such, Burger King's justification for the ban is insufficient. *See N.L.R.B. v. Montgomery Ward & Co., Inc.*, 554 F.2d 996, 1000 (10th Cir.1977).

I simply cannot distinguish this case on any meaningful ground from those cases in which courts have found "special circumstances" did not exist to justify banning employees from wearing union buttons while they are working and having public contact at a convenience store, *see Pay 'N Save v. N.L.R.B.*, or a department store, *see NLRB v. Montgomery Ward*. Moreover, the Board's order regarding union buttons at Burger King is consistent with its earlier order in *Glenlynn, Inc., d/b/a McDonald's Drive-In Restaurant*, 204 NLRB 299, 310 (1973), prohibiting a restaurant virtually identical to Burger King from banning its employees' wearing of union buttons.