**MEIJER, INCORPORATED, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner,**

**United Food and Commercial Workers Local 951, Intervenor.**

Nos. 95–6116, 95–6309.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 17, 1996.

Decided Dec. 9, 1997.

Jeffrey Scott Rueble (argued and briefed), Grand Rapids, MI, for Petitioner/Cross–Respondent.

Aileen A. Armstrong (briefed), Dep. Assoc. Gen. Counsel, Paul J. Spielberg, David A. Fleischer (argued and briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, for Respondent/Cross–Petitioner.

John C. Schlinker (argued and briefed), Foster, Swift, Collins & Smith, Lansing, MI, Charles F. Szymanski (briefed), Kalniz, Iorio & Feldstein, Grand Rapids, MI, for Intervenor.

Before: KEITH, NORRIS, and DAUGHTREY, Circuit Judges.

KEITH, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. NORRIS, J. (pp. 1217–19), delivered a separate dissenting opinion.

KEITH, Circuit Judge.

Meijer Inc., a food and general merchandise retailer, is appealing an order of the National Labor Relations Board ("the Board"). The order requires Meijer to allow its employees at its Traverse City store to wear union insignia while on the job. The Board has cross-petitioned for enforcement of the order.

## I. STATEMENT OF FACTS

The order stems from a finding by the Board that Meijer violated § 8(a)(1) of the National Labor Relations Act ("the Act"), by taking disciplinary actions against employees who wore union pins and other union paraphernalia.[1] Meijer only allows its employees

---

1. The order, redacted below in part, requires Meijer to:

cease and desist from the conduct found unlawful and from in any like or related manner interfering with, restraining, or coercing employees in the exercise of their statutory rights; to rescind the October 5, 1993, notice to employees prohibiting the wearing of union insignia; to rescind the unlawful warnings issued to employees Zeits and Bogin, remove all reference to the warnings from its files, and notify the employees in writing that it has done so and the warnings will not be used against them in any way; and to post copies of an appropriate notice.

to wear pins and buttons approved by the company on their uniforms.[2] There are three types of pins that fall into that category. The employees may wear (and may be required to wear) buttons that help promote certain products or company services (e.g., a "Terrific Attitudes Count" pin); employees may wear buttons with respect to customer relations programs (e.g., "Next in Line" service at the checkout counters); and in stores where employees are represented by a union, employees may wear pins or buttons designating their union affiliation.

In October of 1992, Tom Kollar ("Kollar") became the store manager of the Traverse City store. Subsequent to his arrival, the United Food & Commercial Workers Local 951, AFL–CIO ("the Union"), began an organizing campaign at the store. Neither party disputes the fact that the dress code at the store was loosely enforced, if at all, before Kollar became store manager, and that Kollar strictly enforced the dress code after he arrived. At his first staff meeting, Kollar distributed a memo stating that: "Name badges, company approved buttons, United Way pins, and service recognition pins are the only items that are allowed on vests and smocks. All others are to be removed." Kollar later reissued the memo on April 1993 after Meijer changed the colors of its vests and smocks. The Board claims that Kollar knew that the union was conducting an organizational campaign at the time the memo was issued, even though the employees were not yet wearing union pins.

In September of 1993, the employees began to wear union pins as part of their organizational campaign. The pins were approximately one inch by one-half inch in size, with blue and red lettering against a white background with gold borders. They contained the words "Union Yes" with a checkmark within the letter "o".

On October 5, 1993, Kollar sent a memo to the store's managers, via electronic mail, directing them to notify all employees who were on the sales floor that they could not wear union pins or buttons on their uniforms. According to both parties, Kollar directed his managers to politely ask the employees to remove the pins; and if they refused to do so, to inform them that they could be sent home for insubordination. The managers were also to report each incident to Kollar. On October 8, Kollar posted notices in the employees' break room clarifying and reiterating Meijer's policy that only approved pins may be worn by employees while they are working in areas open to the public.

On December 6, 1993, the Union filed unfair labor practice charges against Meijer. On January 19, 1994, the Regional Director issued a complaint alleging that Meijer violated the Act by prohibiting employees from wearing union buttons, hats, and jackets while the employees were on the sales floor, and by disciplining two employees for violating its rules against union solicitation and distribution. The case was tried before Administrative Law Judge Michael O. Miller, who held that although Meijer had not violated the Act by prohibiting employees from wearing union hats and jackets on the sales floor, it violated the Act by disciplining two employees for flouting the rules against solicitation and distribution, and by prohibiting employees from wearing union buttons and pins on the sales floor. On July 31, 1995, the Board affirmed the rulings of the ALJ and adopted his recommended order. Meijer appeals to this Court, seeking a review of only those portions of the Board's order pertaining to the wearing of union pins and buttons.

## II. DISCUSSION

### A. Standard of Review

■■■ We accept the Board's factual findings if they are supported by "substantial evidence on the record" as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474,

---

2. Meijer's dress code policy states in relevant part that:
   > [Employees] who meet the customer must be uniformly recognizable as representatives of the Company, and as sources of information and service. Our appearance is particularly important. Uniforms and personal clothing must be neat and clean. Store [employees] are required to follow the Uniform and Dress Standards shown in this procedure. Name badges must be worn by employees working in the Store.
   > Special Company buttons, approved Local Union buttons, and current Company service pins may be worn on the uniform.

488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *NLRB v. Okun Bros. Shoe Store, Inc.*, 825 F.2d 102, 105 (6th Cir.1987); *Turnbull Cone Baking Co. v. NLRB*, 778 F.2d 292, 295 (6th Cir.1985). The Board's construction of the Act should be upheld if it is "reasonably defensible." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). Other questions of law are reviewed *de novo*. *NLRB v. C.J.R. Transfer, Inc.*, 936 F.2d 279, 281 (6th Cir. 1991).

The Board argues that Meijer violated § 8(a)(1) of the Act because it interfered with its employees' § 7 rights by threatening them for engaging in protected activity—i.e., for wearing union pins.[3] Because the Board's conclusion is supported by substantial evidence on the record, we deny Meijer's petition to deny enforcement of the Board's order. We, therefore, grant the Board's petition for enforcement of its order.

### B. Statutory Background

Section 7 of the Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." 29 U.S.C. § 157. Section 8(a)(1) protects these rights by making it an unfair labor practice for an employer "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed" by § 7. 29 U.S.C. § 158(a)(1).

The Supreme Court has held that the wearing of union insignia, including buttons and pins, falls within the definition of "other concerted activities" in furtherance of the rights of self-organization granted by § 7 of the Act, and is therefore protected activity. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793 795–804, 65 S.Ct. 982, 984–88, 89 L.Ed. 1372 (1945). The practice of wearing union insignia furthers "the right [of employees] to communicate [effectively] with one another regarding self-organization at the jobsite." *Beth Israel Hospital v. NLRB*, 437 U.S. 483,

491, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978). This general right, however, is not without limitation. The Supreme Court has held that it is the duty of the Board to work out a balance

> between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society.

*Beth Israel*, 437 U.S. at 492, 98 S.Ct. at 2469 (quoting *Republic Aviation*, 324 U.S. at 797–98, 65 S.Ct. at 985–86).

### C. Meijer's First Argument

Meijer's first argument is that this issue is governed by our opinion in *Cleveland Real Estate Partners v. NLRB* ("*CREP*"), 95 F.3d 457 (6th Cir.1996). Meijer strongly urges us to adopt the reasoning and result of this Court's decision in *CREP*. In *CREP*, we held that it was permissible for the owner of a private retail shopping mall to preclude union representatives from distributing handbills directed at shoppers in order to discourage them from patronizing non-union retailers, even though the owner permitted handbilling and solicitation by non-union permittees in the mall. *Id.* at 461–62.

We reversed the Board's determination that the company had engaged in unlawful discrimination against non-employee union representatives by prohibiting them from handbilling in a shopping mall which it managed, while permitting solicitation and handbilling by the Girl Scouts, the Knights of Columbus, political candidates, and school children selling candy, among others. The Court held that the "term 'discrimination' as used [in this context] means favoring one union over another, or allowing employer-related information while barring similar union-related information." *Id.* at 465.

---

**3.** The Board also argued that Meijer violated the Act because it prohibited union insignia in the Traverse City store but permitted the same insignia in other stores where the employees are represented by a union. We decline to address this rather tenuous claim because we find that the Board's order can be enforced on other grounds.

The Court noted three factors peculiar to that case, which led it to a narrow definition of discrimination. First, as a general rule an "*owner of private property* ... *need not* ... permit the distribution of union literature on its property." *Id.* at 462. Second, "there is a substantial difference between the rights of employees and [that] of non-employees with respect to the distribution of union literature on privately owned property." *Id.* at 463. Third, the non-employee union representatives were engaging in non-organizational, informational picketing directed at the general public. *Id.* at 464. As a policy consideration, the Court was also influenced by the fact that "[n]o relevant labor policies are advanced by requiring employers to prohibit charitable solicitations in order to preserve the right to exclude non-employee distribution of union literature when access to the target audience is otherwise available." *Id.* at 465. As a result of these factors, the Court concluded that an employer may preclude handbilling by non-employee union organizers engaged in non-organizational, informational activity directed at the general public, even though the employer allows solicitations by nonunion permittees. *Id.* at 464.

■ Because the considerations that were present in *CREP* are not present in this case, we decline to adopt *CREP* 's narrow definition of discrimination. First, *CREP* involved solicitation by non-employee union organizers. In contrast, this case involves Meijer employees. As the Court in *CREP* noted, there is a substantial difference between the rights of employees and that of non-employees: "The distinction [between employee and non-employee pamphleteering] is one of substance. No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline. But no such obligation is owed to nonemployee organizers." *CREP,* 95 F.3d at 463 (citation omitted).

■ Second, not only did *CREP* involve non-employees, but these non-employees were not engaged in organizational activity. In contrast, this case involves employees of Meijer who were engaged in organizational activity. Employees are accorded greater protection under the Act than non-employees, but they are accorded even greater protection under the Act when they are engaged in organizational activity. *NLRB v. Great Scot, Inc.,* 39 F.3d 678, 682 (6th Cir.1994) (observing that whereas employee organizational rights are at the "core" of the Act's concerns, deserving the greatest protection, non-employee non-organizational activity deserves the least amount of protection under the Act); *see also United Food & Comm. Workers v. NLRB,* 74 F.3d 292, 298 (D.C.Cir. 1996) ("A long history of cases manifests a hierarchy among § 7 rights, with organizational rights asserted by a particular employer's own employees being the strongest, the interest of non-employees in organizing an employer's employees being somewhat weaker, and the interest of uninvited visitors ... attempting to communicate with an employer's customers, being weaker still.").

As we noted in *CREP* and *Great Scot,* trespass cases create a situation where the interests of the trespasser are at their weakest, and therefore, the property owner has a presumptive right to exclude non-employees from its property. Consequently, *CREP's* narrow definition of discrimination is warranted based upon the considerations noted *supra.* Moreover, its deference to property rights reflects policy considerations that are not present in this case. In contrast, and as we noted *supra,* when employees are engaged in the exercise of their § 7 rights, the Supreme Court has held that they have a presumptive right to do so, unless such engagement interferes with the employer's ability to maintain plant discipline. Therefore, rules dealing with employees' rights of self-organization should reflect the primacy of those rights over the employer's property rights.[4]

---

4. There is a third and related reason that leads us to the conclusion that *CREP* is not applicable to the fact-patterns of this case. The Supreme Court has established a relatively clear doctrinal framework—most recently reflected in its decision in *Lechmere v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992)—based upon a set of categorical classifications (e.g., employee/non-employee and organizational/informational). The strength or weakness of an employees' § 7 rights or an employer's property rights are

### D. Meijer's Second Argument

Meijer argues, in the alternative, that this case falls within the *Burger King Corp. v. NLRB*, 725 F.2d 1053 (6th Cir.1984) exception to *Republic Aviation*, and therefore, calls for a like result. It maintains that it enforces, consistently and non-discriminatorily, a policy that its employees may only wear authorized uniforms. Additionally, it also argues that its employees have contact with the public. Therefore, it believes that a 'special circumstance' exists as a matter of law, *per Burger King*.

■ In *Republic Aviation*, the Supreme Court held that it was permissible for the Board to strike the balance in favor of employees challenging an employer's no-solicitation policy. The Court affirmed the Board's conclusion that employees have a presumptive right to wear union insignia, a right that cannot be abridged unless the employer is able to establish that a special circumstance exists, which justifies banning such insignia. *Republic Aviation*, 324 U.S. at 803–04, 65 S.Ct. at 987–88. Additionally, employers seeking to curtail the § 7 rights of employees bear the burden of demonstrating that a restriction is necessary to maintain production or discipline. *Lechmere, Inc., v. NLRB*, 502 U.S. 527, 533, 112 S.Ct. 841, 845–46, 117 L.Ed.2d 79 (1992); *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113, 76 S.Ct. 679, 100 L.Ed. 975 (1956); *District Lodge 91, Int'l Ass'n. v. NLRB*, 814 F.2d 876, 880 (2d Cir. 1987); *NLRB v. Malta Construc. Co.*, 806 F.2d 1009, 1011 (11th Cir.1986) ("[O]nce the existence of presumptively invalid rules is shown, the employer has the duty of going forward with the proof and showing special circumstances to justify the rule.").

Since the Supreme Court's opinion in *Republic Aviation*, lower courts have struggled to establish the proper standard for determining when an employer can prohibit employees from wearing union insignia without running afoul of the employee's § 7 rights. Generally, courts have taken one of two approaches. The majority of Circuit courts that have directly addressed this issue have established a rebuttable presumption in favor of employees, holding that employees have a near-absolute right to wear union insignia; a right that can only be curtailed if the employer meets its burden of presenting special circumstances necessitating a reasonable accommodation. Other Circuits, *Republic Aviation* notwithstanding, have reversed that presumption to favor employers.

Following the majority of Circuits, the Eighth Circuit in *Fabri–Tek, Inc., v. NLRB*, 352 F.2d 577, 583–84 (8th Cir.1965), held that the wearing of union insignia is a form of protected activity that can only be curtailed if it interferes with the employer's ability to maintain discipline in the workforce. In *Fabri–Tek*, an employer sought relief from a Board order prohibiting it from denying its employees their right to wear certain union insignia at work, and from terminating six employees who refused to comply with the employer's work-place rules. *Id.* at 578. The union insignia in question were extremely large "vari-vue" buttons, and "out-size letters stenciled on the back of a blouse saying 'VOTE I.B.E.W.'" *Id.* at 585. Because that court found that the union insignia did disrupt, and would continue to disrupt, employee discipline, it refused to enforce the order. However, the court was careful to note that the employees still retained the right to wear union insignia in the form of customary buttons, *id.* at 585; they just could not wear insignia "which disrupt or tend to disrupt, production and to break down employee discipline." *Id.*

The *Fabri–Tek* approach was followed by the Fourth Circuit in *Virginia Electric & Power Co. v. NLRB*, 703 F.2d 79, 82–83 (4th Cir.1983). There, the Fourth Circuit held that because of a possible conflict between competing unions, which could manifest itself in front of customers, an employer may permissibly require that one of its employees wear a smaller and less gaudy union pin while that employee was on duty as a receptionist.

Similarly, in *Davison–Paxon Co. v. NLRB*, 462 F.2d 364 (5th Cir.1972), the Fifth Circuit held that an employer may prohibit its em-

based upon the case's categorical classification. We do not wish to disturb the precarious doctrinal balance that the Supreme Court has estab-

lished by blurring the categorical distinctions that the Court has instituted.

ployees from wearing large and conspicuous buttons on the sales floor where the employer, a fashionable retail department store, was justifiably concerned that the animosity between union and anti-union factions at the store would manifest itself on the sales floor. *Id.* at 368–69. The court noted that there was evidence that some employees had transferred and resigned because of the conflict over the union campaign. *Id.; see also NLRB v. Intertherm, Inc.,* 596 F.2d 267, 271–72 (8th Cir.1979) (holding that employees have a near-absolute right to wear union insignia in the absence of evidence relating to employee efficiency or plant discipline); *Caterpillar Tractor Co. v. NLRB,* 230 F.2d 357, 358–59 (7th Cir.1956) (stating that employer can prohibit employees from wearing buttons emblazoned with the slogan "Don't be a Scab" because of the slogan's inherent tendency to incite unrest and resentment; however, the restriction does not include "passive inoffensive advertisement of organizational aims and interests ... which in no way interferes with discipline or efficient production").

In other courts, the right of employees to wear union insignia has been less certain. For example, in *NLRB v. Harrah's Club,* 337 F.2d 177, 178–79 (9th Cir.1964), the Ninth Circuit held that employees did not have a per se right to wear union insignia. *Id.* at 179. That is, it did not think that wearing union insignia was "other concerted activit[y]." Rather, "there must be evidence of a purpose protected by the act—i.e., collective bargaining or other mutual aid or protection." *Id.* Predictably, that court went on to hold that the right of employers to project a certain public image by promulgating a uniform policy that prohibits employees from wearing any type of union insignia categorically trumps the right of employees to wear union paraphernalia.

The few opinions from our Court also evidence our difficulty in applying *Republic Aviation.* In *Burger King Corp. v. NLRB,* 725 F.2d 1053, 1055 (6th Cir.1984), an extremely fragmented panel extended the *Harrah's Club* approach to this Circuit by holding that "where an employer enforces a policy that its employees may only wear authorized uniforms in a consistent and nondiscriminatory

fashion and where those employees have contact with the public, a 'special circumstance' exists as a matter of law which justifies the banning of union buttons." Regrettably, that opinion did not address, much less explain, how its holding can be reconciled with the Supreme Court's dictate in *Republic Aviation* that employees have a presumptive right to wear union insignia, and that employers bear the affirmative burden of demonstrating special circumstances.[5] This is, perhaps, the reason that not a single relevant opinion from our Circuit, subsequent to *Burger King,* has adopted that case's per se approach.

In *United Parcel Service v. NLRB* ("*UPS*"), 41 F.3d 1068 (6th Cir.1994), this Court declined to enforce a Board order, which found that UPS violated the Act by issuing a warning notice to one of its drivers for refusing to remove a union pin from his uniform. *UPS* presented two issues: (a) whether a 'special circumstance' existed, which would excuse UPS from respecting the employee's § 7 rights; and (b) if a special circumstance did exist, whether UPS nevertheless violated the employee's § 7 rights by discriminatorily enforcing the company's appearance standards.

Although the Court cited *Burger King* quite extensively, it declined to anchor its holding upon the standards established in that decision. It chose instead to base its holding upon the fact that UPS possessed the sole right under the collective bargaining agreement then in effect between the company and the relevant union to "promulgate and enforce appearance standards." *Id.* at 1073. Consequently, the Court held that UPS neither violated the employee's § 7 rights by prohibiting him from wearing a union pin on his uniform nor discriminated against him because the employer's plenary right to regulate the appearance of its employees was guaranteed by the collective bargaining agreement. *Id.*

In another opinion, *NLRB v. Windemuller Electric, Inc.,* 34 F.3d 384 (6th Cir.1994), this Court also declined to rest its holding upon the reasoning of *Burger King.* Instead we denied the Board's motion to enforce its or-

---

**5.** The majority's decision was accompanied by a pointed dissent from Judge Merritt essentially

addressing this very point. *See Burger King,* 725 F.2d at 1056.

der strictly on property rights grounds. In *Windemuller,* the respondents objected to a Board order stating that they violated § 8(a)(1) because they refused to allow their employees to wear union insignia on company-owned hardhats. The Court cited *Republic Aviation* for the proposition that employees have a presumptive right to wear union insignia, but only on their own clothing. *Id.* at 394. Citing *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), and *NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the seminal cases governing organizing activities by non-employees who wish to come onto an employer's property in furtherance of such activities, it then held that because the hardhats belonged to the company, the employees did not have the right to use the employer's property "as billboards for the union." *Id.*

It is not apparent from the opinion how the panel arrived at the conclusion that *Republic Aviation* stands for the proposition that employees have a presumptive right to wear union insignia only on their own clothing, especially given the fact that that issue in *Republic Aviation*—where the employees wore their union insignia—did not appear to be relevant to the ultimate resolution of the case.[6] Additionally, the panel did not discuss, nor appear to notice, the arguable doctrinal tension between its election to decide union insignia cases strictly on property rights grounds and the *Burger King* Court's use of the 'special circumstances' approach.

Further doubt is cast on the expansion of *Burger King*'s per se 'special circumstances' approach, by our post-*Burger King* opinion in *NLRB v. Mead Corp.,* 73 F.3d 74 (6th Cir.1996). In *Mead,* the company attempted to ban the employees from wearing certain insignia, including buttons, *id.* at 76, on the grounds that such a ban was justified by special circumstances. Citing Judge Merritt's dissent in *Burger King,* we held that it is incumbent upon an employer to demonstrate the existence of special circumstances. *Id.* at 79 (citing *Burger King Corp. v. NLRB,* 725 F.2d 1053, 1056 (6th Cir.1984)(Merritt, J., concurring in part and dissenting in

part)). Finding that the employer had not met its burden, we granted the Board's petition for enforcement of its order. *Id.* at 80–81.

In light of this case history, we now turn to Meijer's argument that this case is governed by *Burger King.* We begin with the proposition established in *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), that employees have a presumptive right to wear union insignia absent special circumstances. In *Burger King Corp. v. NLRB,* 725 F.2d 1053 (6th Cir.1984), this Court attempted to define special circumstances as per se encompassing a situation where employers enforce a policy that employees who have contact with the public may only wear authorized uniforms. *Id.* at 1055. As we stated *supra,* the panel did not address, much less explain, how its holding can be reconciled with the Supreme Court's dictate in *Republic Aviation* that employees have a presumptive right to wear union insignia, and that employers bear the burden of demonstrating that such a special circumstance exists. If we interpret *Burger King* in the manner that Meijer now urges upon us, we would be violating the essence of the Court's opinion in *Republic Aviation.*

The Supreme Court's jurisprudence reflects Congress's intent to allow the Board to delicately balance an employee's right to organize with an employer's property right. *See, e.g., Central Hardware Co. v. NLRB,* 407 U.S. 539, 542–43, 92 S.Ct. 2238, 2240–41, 33 L.Ed.2d 122 (1972); *Hudgens v. NLRB,* 424 U.S. 507, 522, 96 S.Ct. 1029, 1037–38, 47 L.Ed.2d 196 (1976). The Court has developed two categories useful for deciding these types of cases. One category reflects the strength of the employer's interests; the other category reflects the strength of the employee's § 7 rights. Within each category, there is a narrow exception where the weaker interest can be accommodated.

Thus, in *Lechmere v. NLRB,* 502 U.S. 527, 533–34, 112 S.Ct. 841, 846, 117 L.Ed.2d 79 (1992), the Supreme Court stated, "[a]s a rule ... an employer cannot be compelled to

---

**6.** As a matter of fact, the opinion does not appear to mention where the employees were wearing their union buttons, other than to say that they

were being worn "in the plant." *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 795, 65 S.Ct. 982, 984, 89 L.Ed. 1372 (1945).

allow distribution of union literature by non-employee organizers on his property," except in the narrow circumstance when an employer's "property rights may be required to yield to the extent needed to permit communication of information on the right to organize." (citation and internal quotation marks omitted). Similarly, the Supreme Court categorically reaffirmed an employee's near-absolute right to wear union insignia by stating that "no restriction may be placed on the employees' right to discuss self-organization among themselves," except in the comparatively narrow circumstance that an "employer can demonstrate that a restriction is necessary to maintain production or plant discipline." *Id.* at 533, 112 S.Ct. at 846 (citation and internal quotation marks omitted).

*Lechmere* reaffirms the principle established in *Republic Aviation* that employers challenging employees' § 7 rights to self-organization must make an affirmative showing that accommodating the employees' rights will negatively impact production or discipline. To the extent that Meijer argues that such a showing is no longer necessary as a result of our opinion in *Burger King,* that argument is clearly unavailing. Adopting Meijer's position would be tantamount to flouting Supreme Court precedent established for more than a half century and reaffirmed as recently as *Lechmere.*

■ We therefore hold that employees have a right to wear union insignia. That right, however, is not absolute; it can be curtailed if an employer makes an affirmative showing that a special circumstance exists which requires restrictions of this right in order to maintain production, reduce employee dissension or distractions from work, or maintain employee safety and discipline. This right may also be curtailed if the employer makes an affirmative showing that the union insignia that the employee seeks to wear will negatively impact a certain public image that the employer seeks to project.

■ Because substantial evidence on the record supports the Board's contention that Meijer is unable to make such a showing, we must grant the Board's petition for enforcement. Meijer argues that it is justified in banning the employees from wearing union insignia because of the potential for public conflict between union and non-union supporters. This argument is not supported by any evidence, and consequently, must fail. *See, e.g., Fabri–Tek, Inc. v. NLRB,* 352 F.2d 577, 583–84 (8th Cir.1965)(declining to enforce a Board order where the employer proved that the large buttons that the employees sought to wear did disrupt and would continue to disrupt employee discipline); *see also Virginia Electric & Power Co. v. NLRB,* 703 F.2d 79, 82–83 (4th Cir.1983) (holding that the conflict between competing unions justifies the employer's request that employees wear small and less gaudy buttons); *Davison–Paxon Co. v. NLRB,* 462 F.2d 364 (5th Cir.1972)(same). Meijer also argues that the potential for public confusion serves as a special circumstance justifying the banning of union insignia. This argument was rejected as long ago as *Republic Aviation,* 324 U.S. 793, 801–04, 65 S.Ct. at 982, 987–88, and is therefore, also without merit. Thus, because there is not any evidence in the record that can support Meijer's contention that allowing its employees to wear union insignia will negatively impact its public image, or its ability to maintain plant production or discipline, Meijer has failed to carry its burden.

### III. CONCLUSION

For the foregoing reasons, the Board's request for enforcement of its order is **GRANTED,** and Meijer's petition is **DENIED.**

ALAN E. NORRIS, Circuit Judge, dissenting.

Because I would decline to enforce the order of the National Labor Relations Board, I respectfully dissent.

At issue in this appeal is whether Meijer, Inc. violated § 8(a)(1) of the National Labor Relations Act when it refused to allow store employees who had contact with the public to wear union buttons. The store at issue is in Traverse City, Michigan, and is not covered by a union contract. Meijer requires its employees to wear name tags and pins issued to them honoring quality service or advertising store promotions. In accordance with this policy, Meijer issued pins to its employees for them to wear, which included "TAC—

Terrific Attitude Counts" pins, "smiley face" pins, pins promoting the team concept at the store, pins in the shape of skeleton keys signifying "key" employees, and United Way pins. Meijer also issued to its employees promotional buttons advertising new releases in the video department or current store specials, such as sales on potato chips.

On occasion, store employees would wear unauthorized pins, such as Christmas tree pins, teddy bear pins, or pins with photos of children. Some employees wore issue-oriented pins such as "gay rights" or "right to life" pins. Store director Tom Kollar would ask employees to remove the unauthorized pins. He enforced this policy whether or not the offending employee was wearing a seasonal holiday pin or an issue-oriented pin, such as a "gay rights" or a "Union Yes" pin. Prior to Kollar's hiring in 1992, the uniform policy at the Traverse City store had been enforced sporadically. However, Kollar, upon becoming store manager, Kollar began consistently to enforce the store dress code.

In *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), the Supreme Court held that an employer's ban on solicitations, uniformly applied to all types of soliciting and not motivated by a desire to interfere with union activity, nevertheless constituted an unfair labor practice when enforced against employees soliciting union membership in the plant by passing out application cards to other employees during lunch periods. The Court recognized that resolving the case required a balancing of the organizational rights of the employees and the right of employers to maintain discipline in the workplace. *See Republic Aviation*, 324 U.S. at 797, 65 S.Ct. at 985. In so holding, the Court relied upon the presumptions established in *Peyton Packing Co.*, 49 N.L.R.B. 828 (1943):

> The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that

time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property. Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline.

*Republic Aviation*, 324 U.S. at 803 & n. 10, 65 S.Ct. at 988 & n. 10 (citing *Peyton Packing Co.*).

Recent decisions from this court provide a legal basis for Meijer's refusing to allow employees to wear pro-union buttons. We have held that an employer may prohibit employees from wearing union buttons if the employees have contact with the public and if the employer has a consistently enforced policy that employees may wear only authorized uniforms. *See Burger King Corp. v. NLRB*, 725 F.2d 1053, 1055 (6th Cir.1984). However, the employer must enforce the policy in a nondiscriminatory manner. Just last year, in *Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457 (6th Cir.1996), this court held that the term "discrimination" means "favoring one union over another, or allowing employer-related information while barring similar union-related information." *Id.* at 465 (citing *NLRB v. Babcock & Wilcox*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956)). Thus, the fact that an employer allows charitable solicitations but not distribution of union literature does not constitute discrimination:

> No relevant labor policies are advanced by requiring employers to prohibit charitable solicitations in order to preserve the right to exclude nonemployee distribution of union literature when access to the target audience is otherwise available. The purpose of section 8(a)(1) is to prevent employers from interfering with employees' exercise of section 7 rights. An owner of private commercial property who permits a charitable organization to distribute information or conduct solicitations on its prop-

erty simply does not implicate the policies of the NLRA and does not, without more, render an employer guilty of an unfair labor practice when later it chooses to follow the general rule of validly post[ing its] property against nonemployee distribution of union literature.

*Id.* (quotation marks and citation omitted).

Moreover, in *Burger King*, this court recognized that employers in service industries have an interest in projecting a consistent, professional image to the public. 725 F.2d at 1055. Thus, in this limited "special circumstance," the balance under § 8(a)(1) tips in favor of the employer's interests.

The majority believes that the *Cleveland Real Estate Partners'* definition of discrimination should not be applied in the instant case, since *Cleveland Real Estate Partners* involved non-employee solicitors and this case involves employees. To apply the *Cleveland Real Estate Partners* definition here, they argue, would be inconsistent with the Supreme Court's ruling in *Republic Aviation.* However, *Republic Aviation* clearly does not mandate that employees' expression of support for a union may never be limited by employers. Quite the contrary, in *Republic Aviation* the Court recognized the need to balance the interest of the employees in self-organization and the interest of the employer in maintaining a disciplined, productive workplace. Although the Court held that the prohibitions on solicitation and the wearing of union buttons in the industrial plant constituted an unfair labor practice, it also made clear that special circumstances may exist where such limitations are permissible.

Although the union asserts that "no compelling ... balance" is presented in this case, we have recognized the interest that employers in service industries have in projecting a consistent, professional public image. *Burger King,* 725 F.2d at 1055. Likewise, the union's contention—that applying the *Cleveland Real Estate Partners'* definition to cases like ours would effectively overturn the rule of *Republic Aviation*—overstates the impact of such a holding, which would be limited to the *Burger King* and uniform pin situations. These cases turn on the definition of the same term, under the same provision of the same subsection of the same federal statute: § 8(a)(1) of the National Labor Relations Act. It would be wrong to apply different definitions of this vital term on a case-by-case basis.

Moreover, the policy considerations noted in *Cleveland Real Estate Partners* apply equally here. In *Cleveland Real Estate Partners,* this court said that an employer who allowed charitable solicitations simply does not implicate the policies of the NLRA. Likewise, in the instant case, the union alleges that the employer discriminated against protected activity when it supplied employees with buttons to promote store products and services. But buttons announcing potato chip prices simply do not implicate the policies of the NLRA.

This court has already applied, at least implicitly, something like the *Cleveland Real Estate Partners'* definition of discrimination to cases arising under *Burger King.* In *United Parcel Serv. v. NLRB,* 41 F.3d 1068 (6th Cir.1994), we held that the employer's refusal to allow employees to wear union pins, while allowing the wearing of other pins, did not constitute discrimination in violation of § 8(a)(1). The facts of the instant case are strikingly similar to those in *United Parcel Service,* but the majority attempts to distinguish the two by noting that the basis for the *United Parcel Service* decision was that the collective bargaining agreement in force between UPS and the union gave UPS the right to "promulgate and enforce appearance standards." However, since workers, whether unionized or not, do not actually possess the right to promulgate and enforce their own "appearance standards," distinguishing these cases on this ground strikes me as unpersuasive.

As demonstrated by *Cleveland Real Estate Partners, Burger King,* and *United Parcel Service,* this court recognizes an employer's right to prohibit the wearing of union buttons by employees when the employees have contact with the public and the employer has a consistently enforced a nondiscriminatory policy requiring that employees wear only authorized uniforms.

I respectfully dissent.