RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0389P (6th Cir.)
File Name: 03a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WOLGAST CORPORATION,
  *Petitioner/*
  *Cross-Respondent,*

  *v.*

NATIONAL LABOR RELATIONS
BOARD,
  *Respondent/*
  *Cross-Petitioner.*

Nos. 01-1904/2056

On Petition for Review and Cross-Application
for Enforcement of an Order of the National
Labor Relations Board.
No. 7-CA-42474

Argued: December 12, 2002

Decided and Filed:   September 16, 2003[*]

_____

[*] This decision was originally issued as an "unpublished decision" filed on September 16, 2003. On October 28, 2003, the court designated the opinion as one recommended for full-text publication.

Before:  MERRITT and DAUGHTREY, Circuit Judges;
RUSSELL, District Judge.[**]

_____

## COUNSEL

**ARGUED:**  David J. Masud, MASUD, GILBERT & PATTERSON, Saginaw, Michigan, for Petitioner. Ruth Burdick, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent. **ON BRIEF:** David J. Masud, Kraig M. Schutter, MASUD, GILBERT & PATTERSON, Saginaw, Michigan, for Petitioner. Ruth Burdick, Aileen A. Armstrong, David Habenstreit, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. Maurice Baskin, VENABLE, BAETJER, HOWARD & CIVILETTI, Washington, D.C., for Amicus Curiae.

_____

## OPINION

_____

   MERRITT, Circuit Judge.  The central issue in this case is whether nonemployee union representatives of the organized employees of a construction subcontractor, whose collective bargaining agreement contains a union access clause, can be categorically barred from a construction jobsite by the contractor with the asserted property interest.  Wolgast Corporation petitions this Court for review of the order of the National Labor Relations Board finding that Wolgast committed an unfair labor practice by barring union representatives from accessing a construction jobsite, and the Board has cross-petitioned for enforcement of its order.  We

_____

[**] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

conclude that Wolgast's petition is without merit and therefore issue an order of enforcement.

## I. Background

Wolgast, a non-union general contractor that hires both union and non-union subcontractors to do construction work, was hired by Cinema Hollywood, LLC to construct an addition to a movie complex. Wolgast subcontracted with Acoustical Arts, Inc., a union contractor, for the required acoustical installation. Acoustical's carpenter employees were represented by Local 706, United Brotherhood of Carpenters and Joiners of America, AFL-CIO. Article V, section c of the Carpenters Local 706 collective bargaining agreement states, in relevant part:

> [B]usiness representatives shall have access to all jobs at all times where possible. A representative of the Michigan Regional Council of Carpenters shall have the right to visit the job during working hours to interview the employer, steward, or men at work, but shall not hinder the progress of the work.

(J.A. at 85.) On October 13, 1999, Leon Turnwald, the business representative and organizer for Local 706 went with Robert Horner, the business representative from Local 1045, the union representing the lathers employed by Acoustical, to the Cinema Hollywood job site "to check on" a new Acoustical employee. According to Turnwald, Brian Grandy, a supervisory employee of Wolgast and the project's superintendent, ordered Turnwald off the property. Before leaving the property, Turnwald discovered that the new employee had already left the site before the end of his shift. That evening, Turnwald spoke to the employee by telephone, who said he could not work at the site because the scaffolding was dangerous. Turnwald then spoke to John Binder, owner of Acoustical, who said the scaffolding was safe. Turnwald also learned that they had forgotten to sign up a new lather while at the site. The next day, Turnwald and

Horner went to the site to check on the scaffolding and sign up the employee. Once again, Grandy ordered them to leave the property, this time "ranting and raving" and asking "what the fuck are you guys doing here again?" Grandy grabbed Turnwald's arm and pulled him down a hallway until Horner stepped between them. Grandy continued down the hallway, and Turnwald proceeded to sign up the new employee at a makeshift table made of a sheet of plywood resting on bats of insulation. During this process, Binder came in and placed his set of tools on the makeshift table. At some point, Horner and Binder stepped outside for a moment. When Turnwald had a question about the paperwork, he also stepped outside to ask Horner how to fill it out. As they both began to reenter the building, Grandy stood in the doorway blocking their access, stating "You guys get the fuck out of here, you're not coming back in." Turnwald brushed past Grandy and went back in to finish the paperwork. Grandy then said to the new employee, who was on his knees by the makeshift table filling out the paperwork, "That's all the fucking union does is take your money," to which the employee replied, "No, the union's the only way I can get ahead." Announcing that he was going to "clean up this area right here," Grandy reached down, grabbed the makeshift table and forcefully flipped it over so everything on it, including Binder's tools, flew off and onto Turnwald. At this, Turnwald and Horner left the site, apparently abandoning their plan to check the safety of the scaffolding.

The administrative law judge ruled that Wolgast violated section 8(a)(1) of the Act by interfering with Turnwald's access to the jobsite. Relying on *CDK Contracting*, 308 N.L.R.B. 1117 (1992), the judge ruled that the general construction contractor with the asserted property interest is obligated as a matter of labor law to yield its interest so that the subcontractor's employees' section 7 right to be represented by their chosen union and to receive the agreed-upon benefits of that representation may be fully implemented. The judge ordered Wolgast to allow Local 706 access to Acoustical employees when requested, subject to

any "reasonable and nondiscriminatory rules pertaining to nonemployee access" Wolgast may put in place. On appeal to the Board, Wolgast argued that *CDK Contracting* was wrongly decided and that this case is instead controlled by *Lechmere v. N.L.R.B.*, 501 U.S. 527 (1992). There, the Supreme Court held that an employer may categorically exclude nonemployee union organizers from its property subject to two narrow exceptions not applicable here. Finding that this case, like *CDK Contracting*, presents "substantially different issues and considerations" from those presented in *Lechmere*, the Board rejected Wolgast's argument and affirmed.

## II. Analysis

Section 8(a)(1) of the National Labor Relations Act provides that "it shall be an unfair labor practice for an employer [] to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of this Act]." 29 U.S.C. § 158(a)(1). Section 7 provides in pertinent part that "employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. An employer therefore violates section 8 and commits an unfair labor practice where it restrains or interferes with employees' section 7 rights. *Lechmere*, 502 U.S. at 531-32.

We review *de novo* the Board's interpretation of Supreme Court and Sixth Circuit decisions, and uphold the Board's "reasonably defensible" construction of the Act in the absence of binding precedent. *See Meijer v. NLRB*, 130 F.3d 1209, 1212 (6th Cir. 1997). In determining whether the Board's construction of the Act is "reasonably defensible," we keep in mind that the "task of the Board, subject to review by the courts, is to resolve conflicts between § 7 rights and private property rights and to seek a proper accommodation between

the two." *Hudgens v. NLRB*, 424 U.S. 507, 521 (1976) (internal quotations omitted). As always, accommodation between employees' § 7 rights and employers's property rights "must be obtained with as little destruction of the one as is consistent with the maintenance of the other." *NLRB v. Babcock & Wilcox*, 351 U.S. 105 (1956). We turn first to the Board's determination that *Lechmere* does not determine the outcome of this case as a matter of law.

In *Lechmere*, union organizers distributed handbills on the windshields of cars parked in a shopping plaza parking lot as part of an effort to organize the employees of Lechmere, Inc.'s retail store located at the shopping plaza. Lechmere personnel removed the handbills and asked the union organizers to leave. The administrative law judge ruled that Lechmere had violated section 8 by barring the nonemployee union organizers from its property. The Board affirmed, relying on a multifactor balancing test developed in *Jean Country*, 291 NLRB 11, 14 (1988). The Supreme Court denied enforcement of the Board's order, holding that, at least as applied to nonemployee union organizers, *Jean Country* impermissibly eliminated the threshold stage of the inquiry by failing to make a distinction between employees and nonemployees of the targeted employer. *See Lechmere*, 502 U.S. at 538 (citing *Babcock & Wilcox*, 351 U.S. at 112). The Court reiterated the "distinction of substance" established in *Babcock & Wilcox* between the organizing activities of employees and nonemployees: "As a rule, then, an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property." *Id.* at 533. As explained by the Court:

To say that our cases require accommodation between employees' and employers' rights is a true but incomplete statement, for the cases also go far in establishing the *locus* of that accommodation where nonemployee organizing is at issue. So long as nonemployee union organizers have reasonable access to employees outside an employer's property, the requisite

accommodation has taken place. It is *only* where such access is infeasible that it becomes necessary and proper to take the accommodation to the next level, balancing the employees' and employers' rights . . . .

*Id.* at 538 (emphasis in original).

*Lechmere* thus reaffirms that, in the generic situation presenting a conflict between the competing interests of employees and employers, the primary responsibility to make the proper accommodation lies with the Board, whose determination is subject to review only for reasonableness. In the specific case of nonemployee union organizers who attempt to enter an employer's property for purposes of organizing, however, the Board does not even reach the balancing stage of the inquiry: An employer may "post his property against nonemployee distribution of union literature if [1] reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message and [2] if the employer's notice or order does not discriminate against the union by allowing other distribution." *Babcock & Wilcox*, 351 U.S. at 112.

The Board's pre-*Lechmere* decisions requiring the contractor to allow union access to its unionized subcontractor's jobsite are founded on its view that the represented employees' § 7 rights "include the right to receive the various services of union business agents which services are necessary to police existing collective-bargaining agreements or to negotiate new agreements." *See, e.g., Villa Avila*, 253 NLRB 76, 80 (1980), *enf'd. as modified*, 673 F.2d 281 (9th Cir. 1982); *see also C.E. Wylie Constr. Co.*, 295 NLRB 1050, 1050 (1989). The administrative judge in *Villa Avila* further explained that, by hiring unionized subcontractors to perform work on the jobsite, the general contractors

have thereby invited these subcontractors to, in effect, maintain a temporary place of business on the site, at

which locus the working conditions of the subcontractors' employees are necessarily established. It may therefore be reasonably inferred that Respondents, by hiring such subcontractors, thereby "necessarily submitted their own property rights to whatever activity, lawful and protected by the Act," might be engaged in by union business agents in the performance of their duties vis-a-vis these subcontractors who have contractually granted union business agents unrestricted access to the site.

*Villa Avila*, 253 NLRB 76, 81 (1980) (quoting *Hudgens v. NLRB*, 230 NLRB 414, 418 (1977) (on remand)). The Board acknowledged that the union representatives were not employees of the contractor or subcontractor, but reasoned that under the factually distinct circumstances involving the subcontractor's employees' own § 7 right to union access under a collective bargaining agreement and the union's manifest representative capacity regarding that same right, balancing was appropriate and the represented employees' right outweighed the contractor's right to control the property. *See id.* at 80-81. According to the Board, the common and accepted procedures in place at construction sites requiring that the union representatives give notice of their presence to the general contractor "effectively accommodate the interests and obligations of all parties." *Id.* at 81.

Just a few months after *Lechmere* was decided, the Board relied on *C.E. Wylie Construction Co.* and *Villa Avila* to reaffirm that a construction contractor must permit its unionized subcontractor to allow union access pursuant to the collective bargaining agreement between the subcontractor and the union. *See CDK Contracting*, 308 NLRB at 1117. The Board again distinguished the Supreme Court's general rule regarding nonemployee organizers as reaffirmed in *Lechmere*, stating that *CDK Contracting* presented "substantially different issues and considerations." *Id.* Under these particular circumstances, "access is necessary in order to investigate and to resolve contract compliance when the

contract grants the union such access." *Id.* (citing *Villa Avila*, 253 NLRB at 81).   Unlike the situation in *Lechmere*, the contractor, "by soliciting other employers to perform work a the jobsite, 'invited' subcontractors, and their respective subcontractors, onto the jobsite, and thus voluntarily subjected its 'property rights' to the Union's contractual 'access' rights with those contractors." *Id.*  As a result, "[t]he Respondent [contractor] was not privileged to interfere with the contractual obligations of the subcontractors and the contractual rights of the unions that represented subcontractor employees." *Id.*  Finally, without access pursuant to the access provision, the "Union did not have a reasonable, effective alternative means to enforce its contractual rights." *Id.*

Respondent Wolgast asserts here that the Board's rule in *CDK Contracting* stands as a "radical departure" from *Lechmere.*   In support, Wolgast points to the Court's statement in *Lechmere* that, "by its plain terms, . . . the NLRA confers rights only on *employees*, not on unions or their nonemployee organizers."   502 U.S. at 532 (emphasis in original). According to Wolgast, this statement provides a "trump card" by predetermining that every nonemployee union representative can be barred from its property, regardless of his purpose or relationship with employees located on the jobsite, in the same manner as the nonemployee union organizer in *Lechmere.*  Wolgast further points out that this court has construed *Lechmere* to extend beyond the purely organizational situation to apply to situations involving other nonemployee union activities. *See, e.g.*, *Albertson's Inc. v. NLRB*, 301 D.3d 441, 454 (6th Cir. 2002) (holding that, under *Lechmere*, an employer may bar nonemployee union representatives from distributing handbills on the employer's property informing the employer's patrons of the union's economic strike with one of the employer's suppliers); *Sandusky Mall v. NLRB*, 242 F.3d 682, 686 (6th Cir. 2001) (applying *Lechmere* in a case involving "area standards" handbilling by nonemployee union representatives urging shoppers not to patronize a store hiring

a non-union contractor); *Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457 (6th Cir. 1996), *overruled on other grounds in NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115, 1119 (6th Cir. 1997) (applying *Lechmere* to handbilling by nonemployee union representatives urging a boycott of a nonunion store at a strip mall).[1]

In our view, *Lechmere* and the cases cited from our court are readily distinguishable from this case. Most significantly, the union agent at issue here did not seek access for purposes of organizing employees, handbilling patrons, boycotting, or other similar activity in exercise of the union's "derivative" § 7 rights.   Rather, Turnwald sought access as the direct representative of the subcontractor's employees under the authority of the collective bargaining agreement. In our view, at issue here is the employees' own undisputed § 7 right to negotiate and benefit from a collective bargaining agreement which allows union access for purposes of investigating the premises and interviewing employees on-site.   Neither *Lechmere* nor any of our cases address union access for representational purposes.

In any event, we have stated elsewhere that *Lechmere*'s statement that the Act "confers rights only on employees" is not so expansive as Wolgast suggests.   In *BE&K Construction Co. v. NLRB*, 246 F.3d 619, 626-27 (2001), *rev'd on other grounds*, 536 U.S. 516 (2002), we were faced with the question whether a union whose members work for

---

[1]Wolgast also relies on *NLRB v. Windemuller Electric, Inc.*, 34 F.3d 384 (6th Cir. 1994), in which a panel of this court relied on *Lechmere* to hold that an employer can lawfully prevent its unionized employees from placing union stickers on their employer-owned hardhats.  A later panel of this court rejected *Windemuller*'s reasoning, however, insofar as it treated the employees' right to wear union insignia as a matter of property rights under *Lechmere* rather than of employees' organizational rights under *Republic Aviation. See Meijer Inc. v. NLRB*, 130 F.3d 1209, 1217 (6th Cir. 1997) (holding that under the balancing test in *Republic Aviation*, 324 U.S. 793 (1945), "employees have a right to wear union insignia" on employer-owned uniforms).

construction subcontractors possess a § 7 right that could potentially be violated by the nonunion contractor-employer when the employer filed baseless lawsuits in retaliation for the union's activities. In concluding that unions possess such a § 7 right, we distinguished *Lechmere* as specifically involving nonemployee union organizers attempting to distribute organizational literature on an employer's property. *Id.* at 627. We further noted that, by allowing exceptions to its rule, "the Court . . . recognized that § 7 of the Act, by necessary implication, extended some legislative protection to unions." *Id.* at 626.

As a general matter, it is a reality inherent in construction work that a construction subcontractor's employees work on the property of another. The Board has set forth reasons that adequately take into account the specific circumstances presented here, carefully considering the asserted property rights of the contractor and the accommodations required when the contractor voluntarily hires unionized subcontractors. Contrary to Wolgast's suggestion, the Board did not hold that a general contractor is "bound" to a contract term to which it is not a party. Rather, it held that the contractor may not interfere with the protected activity relating to a union subcontractor and its employees in the name of private property interests. *See Hudgens*, 424 U.S. at 510 nn.3 &11 (recognizing that "a statutory 'employer' may violate § 8(a)(1) with respect to employees other than his own"). We agree with the Board's reasoning in *Villa Avila* that, to the extent that general contractor interferes with the duties of the union as representative of the subcontractor's employees, "so are the employees' Section 7 rights diminished." 253 NLRB at 81. Under the circumstances presented here, the Board's balancing of the conflicting interests in *CDK Contracting* is a reasonably defensible interpretation of the Act.

Finally, regarding Wolgast's assertion that Turnwald waived his access right because he did not follow Wolgast's rules for visiting the jobsite, we affirm the Board's ruling.

The administrative law judge found no credible evidence that there were such rules or that they were conveyed to the union agent. This finding was undisturbed by the Board, and we cannot say it is clearly erroneous. We need not address Wolgast's other arguments, as they are wholly without merit.

### III. Conclusion

In *CDK Contracting*, the Board correctly concluded that *Lechmere* did not control the outcome of the case. In exercising its authority to strike the proper balance between the property interests of a construction contractor and the interests of the employees of its unionized subcontractors to benefit from their collective bargaining agreement, the Board has created a rule that is both "reasonably defensible" and in accord with the guiding principle of labor law. Accordingly, we DENY Wolgast's petition for review and GRANT the Board's request for enforcement of its order.