# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60241

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2018

Lyle W. Cayce
Clerk

IN-N-OUT BURGER, INCORPORATED,

Petitioner Cross-Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent Cross-Petitioner

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

Before KING, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In April 2015, employees at an In-N-Out Burger in Austin, Texas wore buttons demonstrating solidarity with the "Fight for $15" campaign, a national movement advocating for a $15 per hour minimum wage, the right to form a union without intimidation, and other improvements for low-wage workers.[1]

---

[1] *See generally* Kate Andrias, *The New Labor Law*, 126 YALE L.J. 2, 47–50 (2016) (tracing the history of the "Fight for $15" movement from its November 2012 inception among striking fast-food workers in New York City through April 2015, when tens of thousands of individuals participated in mass protests and strikes across the United States); Steven Greenhouse & Jana Kasperkevic, *Fight for $15 Swells into Largest Protest by Low-Wage Workers in US History*, THE GUARDIAN (Apr. 15, 2015), https://www.theguardian.com/us-

No. 17-60241

But when managers responded by invoking a company rule that prohibits employees from "wearing any type of pin or stickers" on their uniforms, the employees desisted. The National Labor Relations Board (the "Board" or "NLRB") found the company's rule unlawful under the National Labor Relations Act (the "Act" or "NLRA"). In-N-Out now asks this court to set aside the Board's order, while the Board asks us to enforce it. For the reasons stated below, we DENY In-N-Out's petition for review and GRANT the Board's cross-application for enforcement.

I

In-N-Out Burger, Inc. owns and operates a chain of over 300 fast-food restaurants in California, Texas, and several other western states. In-N-Out requires its employees to follow a detailed appearance code and to wear a uniform consisting of "nine elements": white pants, a white shirt, white socks, black shoes, a black belt, a red apron, a gold apron pin, a company-issued name tag, and a hat. The company also maintains a rule in its employee handbook that states: "Wearing any type of pin or stickers is not permitted." In-N-Out strictly enforces its uniform policy and appearance rules.

On April 17, 2015, Amanda Healy, an employee at an In-N-Out restaurant in Austin, wore a "Fight for $15" button during work. The button was the size of a quarter and featured "$15" superimposed on an image of a raised fist.



---

news/2015/apr/15/fight-for-15-minimum-wage-protests-new-york-los-angeles-atlanta-boston.

2

No. 17-60241

No manager spoke to Healy about her button that day, but when employee David Nevels asked manager Daniel Moore if he could wear a "Fight for $15" button, Moore responded that the button was "not part of the In-N-Out uniform."

The following day, Healy again wore a "Fight for $15" button. This time, Moore questioned her about it. Healy told Moore that the button referred to a campaign by fast-food workers pursuing "a higher minimum wage, living wages." Moore asked Healy if she thought store manager Nick Palmini "would be okay" with her wearing the button. Healy replied that while she believed he would be, it was her understanding that Palmini could not ask her to remove the button. The conversation then ended. That same day, employee Brad Crowder wore a "Fight for $15" button similar to Healy's. An assistant manager reported Crowder to Palmini, who called Crowder to his office. Palmini asked Crowder if he was familiar with the company's uniform policy. Crowder replied that he was. Palmini then told Crowder that he could not add anything to the uniform and instructed Crowder to remove the button. Crowder complied but informed Palmini that he would be filing an unfair labor practice charge with the National Labor Relations Board.

Notwithstanding the "no pins or stickers" rule, In-N-Out requires its employees to wear company-issued buttons twice a year. During the Christmas season, employees are required to wear buttons stating "MERRY CHRISTMAS / IN-N-OUT HAMBURGERS / NO DELAY." During the month of April, employees must wear buttons soliciting donations to the In-N-Out Foundation, a nonprofit organization established by the company's owners that focuses on preventing child abuse and neglect. Those buttons read: "TEXT '4KIDS' TO 20222 TO DONATE / YOUR $5 WILL HELP PREVENT CHILD ABUSE / IN-N-OUT BURGER FOUNDATION." The In-N-Out Foundation buttons come in four variations, each featuring a picture of a different child.

No. 17-60241

The Christmas and In-N-Out Foundation buttons are approximately three times larger in diameter than the "Fight for $15" buttons.



Unfair labor practice charges were filed against In-N-Out, and following an investigation, the NLRB's General Counsel issued a complaint alleging that the company's "no pins or stickers" rule violated the National Labor Relations Act. An administrative law judge ("ALJ") held a hearing at which Healy, Palmini, Moore, and In-N-Out's vice president of operations, Robert J. Lang, Jr., testified. In-N-Out sought to demonstrate that its interest in maintaining a unique public image and its concern with ensuring food safety constituted "special circumstances" sufficient to justify the rule. The ALJ rejected the company's "special circumstances" defense, found that In-N-Out had committed unfair labor practices by maintaining and enforcing the "no pins or stickers" rule and by directing Crowder to remove his "Fight for $15" button, and issued a recommended order. In-N-Out then sought further review by the Board.

The Board's decision largely affirmed the ALJ's findings and conclusions. *In-N-Out Burger, Inc.*, 365 NLRB No. 39, 2017 WL 1103798 (Mar. 21, 2017).

No. 17-60241

The Board adopted the ALJ's findings that In-N-Out's maintenance and enforcement of the "no pins or stickers" rule and the instruction to Crowder violated Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). In addition, the Board found that In-N-Out committed an unfair labor practice when Moore told Nevels that the "Fight for $15" button was not a part of the company uniform. Based on these findings, the Board ordered In-N-Out to cease and desist from, inter alia: "[m]aintaining and enforcing a rule that prohibits employees from wearing, while on duty, any button or insignia apart from those it has approved, and that makes no exception for buttons or insignia pertaining to wages, hours, terms and conditions of employment or union or other protected activities"; "[d]irecting employees to remove from their clothing any button or insignia pertaining to wages, hours, terms and conditions of employment or union or other protected activities"; and "[d]irecting employees that they may not wear any [such] button[s] or insignia." The Board further ordered In-N-Out to take certain affirmative actions "necessary to effectuate the policies of the Act," including rescinding its "no pins or stickers" rule, removing from its files any reference to the unlawful instructions given to Crowder and Nevels, and posting remedial notices at its locations.

In-N-Out subsequently filed a petition for review of the Board's order with this court, and the Board cross-applied for enforcement. *See* 29 U.S.C. § 160(e), (f).

## II

## A

Judicial review of NLRB decisions and orders is limited and deferential. This court "will affirm the Board's legal conclusions 'if they have a reasonable basis in the law and are not inconsistent with the [National Labor Relations] Act,'" *Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 292 (5th Cir. 2015) (quoting *Valmont Indus., Inc. v. NLRB*, 244 F.3d 454, 464 (5th Cir. 2001)), and will

5

uphold the Board's findings of fact so long as they are supported by "substantial evidence," *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 207–08 (5th Cir. 2014); *accord* 29 U.S.C. § 160(e). In recognition of the Board's primary responsibility for administering the Act and its expertise in labor relations, we give significant deference to the Board's application of the law to the facts, and we will not disturb "plausible inferences [the Board] draws from the evidence, even if we might reach a contrary result were we deciding the case *de novo*." *Valmont Indus.*, 244 F.3d at 463 (quoting *NLRB v. Thermon Heat Tracing Servs., Inc.*, 143 F.3d 181, 185 (5th Cir. 1998)). To the extent the Board affirms and adopts an ALJ's findings and conclusions, we apply these same deferential standards to the ALJ's decision itself. *See Weigand v. NLRB*, 783 F.3d 889, 895 (D.C. Cir. 2015); *NLRB v. KSM Indus., Inc.*, 682 F.3d 537, 544 (7th Cir. 2012); *Valmont Indus.*, 244 F.3d at 463; *Standard Fittings Co. v. NLRB*, 845 F.2d 1311, 1314 (5th Cir. 1988).

B

Section 7 of the National Labor Relations Act guarantees to employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) of the Act enforces these rights by making it an unfair labor practice for employers to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [S]ection [7]." 29 U.S.C. § 158(a)(1).

Since the Act's earliest days, it has been recognized that Section 7 protects the right of employees to wear items—such as buttons, pins, and stickers—relating to terms and conditions of employment (including wages and hours), unionization, and other protected matters. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801–03 (1945); *id.* at 802 n.7 ("[T]he right of employees

No. 17-60241

to wear union insignia at work has long been recognized as a reasonable and legitimate form of union activity, and the [employer]'s curtailment of that right is clearly violative of the Act." (quoting *Republic Aviation Corp.*, 51 NLRB 1186, 1188 (1943))); *Medco Health Solutions of Las Vegas, Inc.*, 364 NLRB No. 115, 2016 WL 4582495, at *4 (Aug. 27, 2016); *Armour & Co.*, 8 NLRB 1100, 1112 (1938). Accordingly, an employer that maintains or enforces a rule restricting employees from displaying such items commits an unfair labor practice in violation of Section 8(a)(1). *Republic Aviation*, 324 U.S. at 796, 801–03; *Boch Imports, Inc.*, 362 NLRB No. 83, 2015 WL 1956199, at *2 (Apr. 30, 2015) (hereinafter, "*Boch Honda*"), *enforced*, *Boch Imports, Inc. v. NLRB*, 826 F.3d 558 (1st Cir. 2016); *Ohio Masonic Home*, 205 NLRB 357, 357 (1973), *enforced*, 511 F.2d 527 (6th Cir. 1975).

The Board has created a "narrow" exception to this rule, however: if an employer can demonstrate "special circumstances sufficient to outweigh [its] employees' Section 7 interests and legitimize the regulation of such insignia," then the right of employees to wear these items "may give way." *Pac. Bell Tel. Co.*, 362 NLRB No. 105, 2015 WL 3492100, at *4 (June 2, 2015), *pet. for review dismissed*, No. 15-1186, 2016 WL 3040578 (D.C. Cir. May 10, 2016); *E & L Transp. Co.*, 331 NLRB 640, 640 n.3 (2000) ("[T]he 'special circumstances' exception is narrow."). The Board has explained the "special circumstances" exception as reflecting a "balancing" of employees' Section 7 rights and employers' potentially conflicting managerial interests. *Medco*, 2016 WL 4582495, at *7; *Nordstrom, Inc.*, 264 NLRB 698, 700 (1982); *see also Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 504–05 (1978) (explaining that activities "carried on by employees already rightfully on the employer's property" implicate "[t]he employer's management interests rather than [its] property interests," and that "[t]his difference is one of substance" (quoting *Hudgens v. NLRB*, 424 U.S. 507, 521–22 & n.10 (1976))). But the Board does not conduct an open-ended

balancing analysis anew in every case; rather, it has developed a framework that guides the "special circumstances" inquiry and reinforces its limited scope.

First, the Board recognizes the "special circumstances" exception in only a limited number of situations, such as where permitting employees to display protected items would: (1) "jeopardize employee safety"; (2) "damage machinery or products"; (3) "exacerbate employee dissension"; or (4) "unreasonably interfere with a public image that the employer has established, as part of its business plan, through appearance rules for its employees." *P.S.K. Supermarkets, Inc.*, 349 NLRB 34, 35 (2007) (quoting *Bell-Atl.-Pa., Inc.*, 339 NLRB 1084, 1086 (2003), *enforced*, 99 F. App'x 233 (D.C. Cir. 2004)). Second, the Board applies a presumption: a rule that infringes upon employees' Section 7 right to wear protected items "is presumptively invalid," and it is the employer's burden to overcome that presumption. *Medco*, 2016 WL 4582495, at *4, 6 n.6; *Guard Publ'g Co. v. NLRB*, 571 F.3d 53, 61 (D.C. Cir. 2009). Third, the Board has established an evidentiary standard: to satisfy its burden, an employer must put forth "substantial," "non[-]speculative" evidence of the particular "special circumstances" that it claims justify its restriction. *Medco*, 2016 WL 4582495, at *6 & n.6; *Am. Fed'n of Gov't Emps.*, 278 NLRB 378, 385 (1986). Conjecture, conclusory assertions, and generalizations do not suffice under this standard. *Medco*, 2016 WL 4582495, at *6; *Healthbridge Mgmt., LLC*, 360 NLRB 937, 938 & n.5 (2014) ("The Board has consistently held that an employer who presents only generalized speculation or subjective belief . . . fails to establish special circumstances justifying a ban on union insignia."), *enforced*, 798 F.3d 1059 (D.C. Cir. 2015); *Eckerd's Market, Inc.*, 183 NLRB 337, 338 (1970) ("vague, general evidence" is insufficient). Fourth, even if an employer demonstrates an otherwise sufficient interest in restricting its employees' right to wear protected items, a rule doing so is unlawful unless the employer also shows that it is "narrowly tailored to the special circumstances

No. 17-60241

justifying [its] maintenance." *Boch Honda*, 2015 WL 1956199, at \*2. Under this rubric, wholesale or "blanket" bans are rarely, if ever, lawful. *E.g.*, *Boch Imports*, 826 F.3d at 575–76; *Pac. Bell Tel. Co.*, 2015 WL 3492100, at \*5; *P.S.K. Supermarkets*, 349 NLRB at 34–35.

When reviewing a Board decision involving the "special circumstances" test, courts must give considerable deference to this framework and to the Board's application of it to the evidence in the record. As the Supreme Court has held in the context of Board rules governing the right of employees to engage in union-related solicitation and distribution on the job, "[t]he judicial role is narrow: [t]he rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced." *Beth Israel Hosp.*, 437 U.S. at 492–93, 501; *accord Republic Aviation*, 324 U.S. at 803–05; *see also Boch Imports*, 826 F.3d at 570 & n.7.

### III

By prohibiting employees from "[w]earing any type of pin or stickers," In-N-Out's rule restricts its employees' Section 7 rights and is therefore presumptively unlawful. In-N-Out contends, however, that its unique "public image" interest and its concern with maintaining food safety constitute "special circumstances" sufficient to overcome this presumption and justify the "no pins or stickers" rule.

### A

We first consider In-N-Out's "public image" argument. To establish "special circumstances" based on a purported "public image" interest, In-N-Out was required to put forth substantial, non-speculative evidence that the wearing of protected items by employees would "unreasonably interfere" with a "public image" that the company "has established, as part of its business

9

plan, through appearance rules for its employees," and then show that its "no pins or stickers" rule was "narrowly tailored" to those particular circumstances. *See, e.g.*, *Boch Imports*, 826 F.3d at 571; *P.S.K. Supermarkets*, 349 NLRB at 35.

In-N-Out claims that its business plan has long been focused on fostering a "particularized public image," the "key component" of which "is that the customer experience should be *consistent* from one store to another." According to In-N-Out, the "core components" of this "consistent image" are: (1) a menu that has remained essentially unchanged since 1948; (2) a "sparkling clean environment" in which customers can see their food being prepared in kitchens surrounded by glass; (3) excellent customer service; (4) a business model in which all stores are owned by the company itself rather than by franchisees; and (5) employee uniforms consisting of "a limited number of specific identified elements," to which nothing can be added.

The Board "assum[ed]" that In-N-Out had "tried to create a business identity based on these factors" but concluded that most of these "core components" were "irrelevant" to the company's "special circumstances" defense. In particular, the Board found that In-N-Out failed to demonstrate a connection between the "no pins or stickers" rule and the company's asserted interests in preserving a consistent menu and ownership structure, ensuring excellent customer service, and maintaining a "sparkling clean" environment in its restaurants. The record amply supports the Board's determination in this respect.

The Board then evaluated In-N-Out's assertion that its interest in maintaining consistent, unadorned employee uniforms as part of its public image justified the "no pins or stickers" rule. At the outset, the Board correctly observed that In-N-Out had not established "special circumstances" based solely on the longstanding nature of its uniform and appearance policies, its

strict adherence to those policies, or the fact that customers were likely to see any buttons worn by In-N-Out employees. The scope of the "public image" exception is exceedingly narrow, and it is well established that none of the following considerations, standing alone, justifies a rule restricting employees from wearing items protected by Section 7: an employer's requirement that employees wear uniforms or adhere to a dress code;[2] an employer's status as a retailer or service provider;[3] the fact that employees interact with the public or that customers may be exposed to employees displaying protected items;[4] or the possibility that an employer's customers might be offended by the items' content or message.[5]

---

[2] *Pac. Bell Tel. Co.*, 2015 WL 3492100, at *4 ("The requirement that employees wear a uniform is not alone a special circumstance justifying a button prohibition."); *P.S.K. Supermarkets*, 349 NLRB at 35 (same); *Woonsocket Health Ctr.*, 245 NLRB 652, 659 (1979) ("The mere fact that an employer has a dress code . . . is not a special circumstance . . . .").

[3] *Medco*, 2016 WL 4582495, at *8 & n.13; *Ark Las Vegas Rest. Corp.*, 335 NLRB 1284, 1284 n.1 (2001) ("[S]tatus as a retail employer does not, standing alone, constitute a special circumstance justifying the proscription of union insignia."), *enforced in relevant part and remanded*, 334 F.3d 99 (D.C. Cir. 2003); *Albertson's, Inc.*, 351 NLRB 254, 257 (2007).

[4] *NLRB v. Floridan Hotel of Tampa, Inc.*, 318 F.2d 545, 547 (5th Cir. 1963) ("[T]he fact that the employees involved come in contact with hotel customers does not constitute such 'special circumstances' as to deprive them of their right, under the Act, to wear union buttons at work."); *P.S.K. Supermarkets*, 349 NLRB at 35 ("The Board has consistently held that customer exposure to union insignia, standing alone, is not a special circumstance which permits an employer to prohibit display of such insignia."); *Meijer, Inc.*, 318 NLRB 50, 50 (1995), *enforced*, 130 F.3d 1209 (6th Cir. 1997).

[5] *Casino Pauma*, 362 NLRB No. 52, 2015 WL 1457679, at *2 (Mar. 31, 2015) (rejecting argument that a rule prohibiting employees from wearing "any badges, emblems, buttons or pins on their uniforms" was justified by the employer's concern that the messages on such items "might offend its customers"); *Howard Johnson Motor Lodge*, 261 NLRB 866, 868 n.6 (1982) ("The lawfulness of the exercise by employees of their rights under the Act, including union button wearing, does not turn upon the pleasure or displeasure of an employer's customers."), *enforced*, *Howard Johnson Co. v. NLRB*, 702 F.2d 1 (1st Cir. 1983); *Nordstrom, Inc.*, 264 NLRB at 701–02 (finding that an employer's "fears regarding the creation of controversy on the part of the buying public" were insufficient to justify a ban on protected items).

11

No. 17-60241

The Board also found that In-N-Out's requirement that its employees wear the Christmas and In-N-Out Foundation buttons undercut its claim that "special circumstances" required employee uniforms to be button-free. *See Meijer, Inc.*, 318 NLRB 50, 50, 56 (1995) (employer's contention that "uniformity and neatness" justified its ban on union insignia was "undercut by the fact that [it] permit[ted] or encourage[d] its employees to wear a variety of authorized pins and badges"), *enforced*, 130 F.3d 1209 (6th Cir. 1997); *see also Mt. Clemens Gen. Hosp. v. NLRB*, 328 F.3d 837, 847–48 (6th Cir. 2003) (hospital's claim that allowing nurses to wear buttons objecting to forced overtime would interfere with patient care was undercut by evidence that the hospital had allowed similar buttons with different messages).

In-N-Out contends that the Christmas and In-N-Out Foundation buttons do not undermine its "public image" argument because they are "part of the uniform." But this assertion hurts rather than helps the company's case. If the employee uniform—which In-N-Out describes as an integral component of its overall public image—changes several times each year, then either the company's interest in maintaining a "consistent" public image is not as great as it suggests, or, alternatively, the uniform does not play as critical a role in maintaining that public image as In-N-Out claims. As the Board observed, the Christmas and In-N-Out Foundation buttons are appreciably larger and "significantly more conspicuous" than the "Fight for $15" buttons. Since the addition of larger, more noticeable buttons to employee uniforms does not interfere with In-N-Out's public image, the Board permissibly concluded that allowing employees to wear smaller buttons protected by Section 7, such as the "Fight for $15" buttons, would not *unreasonably* interfere with the company's public image. *See Boch Imports*, 826 F.3d at 574; *Nordstrom*, 264 NLRB at 702.

Under Board law, an employer need not show "actual harm" in order to establish "special circumstances," but it must put forth specific, non-

speculative evidence of the adverse effects it claims justify its restriction. *See Medco Health*, 2016 WL 4582495, at \*6. In-N-Out did not satisfy this burden. Particularly when judged in light of the blanket nature of the ban, the Board was entitled to reject the evidence adduced by In-N-Out as speculative and conclusory. *See Beth Israel Hosp.*, 437 U.S. at 504 ("The Board [is], of course, free to draw an inference from [the] facts in light of its experience, the validity of which 'depends upon the rationality between what is proved and what is inferred.'" (quoting *Republic Aviation*, 324 U.S. at 805)).

In-N-Out asserts that the Board's decision impermissibly conflicts with its previous decision in *Starwood Hotels & Resorts Worldwide, Inc.*, 348 NLRB 372 (2006) (hereinafter, "*W San Diego*"). We disagree. In *W San Diego*, the Board found that an employer did not violate the Act by enforcing a ban on "uniform adornments" against an employee in public areas of a hotel; however, the Board's decision was closely tethered to the "special atmosphere" that the employer was trying to create through the use of its employee uniforms. *Id.* at 373. Specifically, the employer "market[ed] itself as providing an alternate hotel experience referred to as 'Wonderland' where guests can fulfill their 'fantasies and desires' and get 'whatever [they] want whenever [they] want it.'" *Id.* at 372. In distinguishing *W San Diego* from the present case, the Board reasoned that In-N-Out "does not claim that it is trying to turn a fast food hamburger restaurant into 'Wonderland.' Instead, it argues that its business plan involves creating a public image of a very clean restaurant where all employees dress alike." Moreover, while the employer in *W San Diego* "essentially was doing theater [by] creating a make-believe environment the same as actors on a stage," the Board explained that In-N-Out "is not calling upon its employees to be actors[,] . . . is not making itself a stage upon which

to conjure an alternate reality[,] . . . [and] is not casting its employees for parts in a 'Wonderland.'"[6]

This explanation is more than adequate to distinguish *W San Diego* from the present case. The Board may not contravene its own precedents without sufficient explanation, but "where [it] has not departed from a 'uniform rule,' the Board need not give a detailed rationale" for taking a different approach or reaching a different result. *Macy's, Inc. v. NLRB*, 824 F.3d 557, 567 (5th Cir. 2016). Far from establishing an invariable rule, the Board's decision in *W San Diego* turned on "narrow factual circumstances." *Boch Honda*, 2015 WL 1956199, at \*2 n.6. In-N-Out "must do more than point to a single . . . deviant precedent" like *W San Diego* to show that the Board impermissibly departed from its own precedents without adequate reasoning. *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160–61 (5th Cir. 1977); *see also Boch Imports*, 826 F.3d at 572–75 (rejecting employer's reliance on *W San Diego*).

Nor are we persuaded by In-N-Out's argument that *Davison-Paxon Co. v. NLRB*, 462 F.2d 364 (5th Cir. 1972), requires us to set aside the Board's order. In that case, this court denied enforcement of a Board order finding that a retail department store had violated the Act by prohibiting employees from wearing a particular union campaign button. *Id.* at 364–65, 372. The court in *Davison-Paxon* stated that the issue before it was whether "the wearing of the button in question on [the] selling floor was protected activity under Section 7 of the Act." 462 F.2d at 366. That is not the issue here, however. In-N-Out's rule plainly restricts employees from wearing items protected by Section 7, including the "Fight for $15" buttons. But even if *Davison-Paxon* were

---

[6] The Board adopted this discussion of *W San Diego* from the ALJ's decision. Two Board members disavowed the ALJ's discussion of "the scope of what might constitute a legitimate public image justification in circumstances *outside the boundaries of this case*," (emphasis added) but, contrary to In-N-Out's assertion, they did not disavow the grounds on which the ALJ distinguished *W San Diego* from this particular case.

applicable to this case, we would find it distinguishable. As the court emphasized, its decision turned on "undisputed evidence" of "animosity" between rival employee factions and other evidence of "conflicts and tensions," all of which supported the employer's claim that if the button in question had not been banned, a conflict might have "erupt[ed] on the sales floor." *Id.* at 369 (stating that this consideration "clearly distinguishes the instant situation from previous cases"). Here, by contrast, there is no evidence that the "no pins or stickers" rule was necessary to prevent an explosion of employee conflict at In-N-Out's restaurants.

We uphold the Board's reasonable conclusion that In-N-Out failed to establish a "special circumstances" defense based on its "public image" interest.

## B

In-N-Out also argues that it demonstrated "special circumstances" based on its concern with maintaining food safety. *See W San Diego*, 348 NLRB at 375 ("Health and safety concerns may constitute special circumstances justifying restrictions on employees' right to wear union insignia."). In particular, In-N-Out alleges that the "Fight for $15" buttons threatened to compromise food safety because they were "quite small" and "very lightweight," such that an employee might not have noticed if one fell into a customer's food while the employee was working. In-N-Out contrasts this with its company-issued buttons, which it claims are not only "significantly larger" but also feature a "far sturdier" pin mechanism.

As the Board explained in rejecting the company's food safety argument, In-N-Out's "no pins or stickers" rule banned *all* buttons other than its own, "without regard to their safety." Accordingly, even if In-N-Out had demonstrated a genuine basis for its food safety concerns—which it did not—it failed to show that its rule was "narrowly tailored" to that concern. *See Boch*

*Imports*, 826 F.3d at 575–76. With respect to the "Fight for $15" buttons, the ALJ examined those buttons, as well as the company-issued buttons, and "[d]iscern[ed] no apparent, significant difference in safety." The Board also noted that In-N-Out's managers did not make "any effort to examine" the "Fight for $15" buttons for safety issues before restricting employees from wearing them, which indicates that the company's food safety argument is a "post hoc invention[]." *Id.* at 576 (quoting *Boch Honda*, 2015 WL 1956199, at *3 n.7).

The Board's conclusion that In-N-Out failed to establish "special circumstances" based on its purported food safety concern is reasonable and supported by substantial evidence.

## C

The Board properly rejected In-N-Out's "special circumstances" defense. Accordingly, we uphold the Board's findings that the company violated Section 8(a)(1) of the Act by maintaining and enforcing the "no pins or stickers" rule, and by instructing Crowder to remove his "Fight for $15" button. We also uphold the Board's finding that In-N-Out violated Section 8(a)(1) when Moore responded to Nevels' question about wearing a "Fight for $15" button by stating that the button was not a part of the uniform. As the Board explained, "an employee would reasonably infer from that statement that he was being told he could not wear the button." *See Comcast Cablevision of Phila., L.P.*, 313 NLRB 220, 220 & n.3 (1993) (employer violated Section 8(a)(1) by telling employees that the union buttons they were wearing violated the company's uniform policy and "ask[ing], apparently rhetorically, if they thought they should nevertheless wear them"); *cf. NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969) (when assessing employer statements made to employees, one "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that

relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear").

In-N-Out suggests that the Board's order is overbroad because it would require the company to allow buttons and pins of "any size" and "any construction[]" into its kitchens and dining rooms. Neither In-N-Out's exceptions to the ALJ's decision nor its supporting brief to the Board discussed this objection. Consequently, under Section 10(e) of the Act, we cannot review it. 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66 (1982) ("[T]he Court of Appeals lacks jurisdiction to review objections that were not urged before the Board . . . ."); *see also Marshall Field & Co. v. NLRB*, 318 U.S. 253, 256 (1943); *Hallmark Phoenix 3, L.L.C. v. NLRB*, 820 F.3d 696, 713 (5th Cir. 2016).[7]

IV

For these reasons, we DENY In-N-Out's petition for review and GRANT the Board's cross-application for enforcement.

---

[7] Furthermore, because In-N-Out raised this argument for the first time in its reply brief, it is waived. *Flex Frac Logistics*, 746 F.3d at 208. Assuming we could address this argument on the merits, we would reject it. The Board's exercise of remedial authority under Section 10(c) of the Act, 29 U.S.C. § 160(c), is entitled to "the greatest deference," *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 324 (1994), and In-N-Out has not shown that the Board's "order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *NLRB v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 346–47 (1953) (quoting *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943)).